1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

PHILADELPHIA INDEMNITY
INSURANCE COMPANY,

                Plaintiff,

    v.

COMMUNITY ACTION COUNCIL OF
LEWIS, MASON AND THURSTON
COUNTIES, a Washington non-profit
corporation, and THURSTON COUNTY, a
governmental entity and political subdivision,

                Defendants.

No.: _____

COMPLAINT FOR DECLARATORY
RELIEF

Plaintiff Philadelphia Indemnity Insurance Company files this Complaint for

Declaratory Relief against Defendants Community Action Council of Lewis, Mason and

Thurston Counties and Thurston County.

## I.  <u>THE PARTIES</u>

1.1    Plaintiff Philadelphia Indemnity Insurance Company ("PIIC") is an insurance

company organized under the laws of the Commonwealth of Pennsylvania, with its principal

place of business located in Bala Cynwyd, Pennsylvania.

PAGE 1

1.2    Defendant Community Action Council of Lewis, Mason and Thurston Counties ("CAC") is a Washington non-profit corporation with its principal office located in Lacey, Washington. CAC is a citizen of the State of Washington.

1.3    Defendant Thurston County is a political subdivision of the State of Washington and/or a municipal corporation. Thurston County is a citizen of the State of Washington for diversity jurisdiction purposes. *See Moor v. Alameda Cty.*, 411 U.S. 693 (1973); *King Cty. v. Viracon, Inc.*, No. 2:19-CV-508-BJR, 2019 WL 5569675, at *1 (W.D. Wash. Oct. 29, 2019).

## II.  JURISDICTION AND VENUE

2.1    Complete diversity of citizenship between the parties exists because PIIC and the defendants are citizens of different states. 28 U.S.C. § 1332(a)(1)-(3). In addition, the amount in controversy exceeds $75,000, exclusive of interest and costs. Accordingly, this Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1332(a) and 2201(a).

2.2    Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim at issue occurred in this Judicial District. Assignment to this Division is also appropriate because the events giving rise to the claim at issue occurred in Thurston County, Washington.

## III.  FACTS

3.1    PIIC incorporates by reference the allegations set forth above in Paragraphs 1.1 through 2.2.

3.2    This declaratory judgment action seeks rulings regarding PIIC's obligations under commercial insurance policies issued by PIIC to CAC regarding contractual claims for reimbursement of funds asserted against CAC by Thurston County (the "Underlying Claims").

**A.**    **The Underlying Claims**

3.3    On August 8, 2024, Thurston County sent a letter to CAC demanding payment in the amount of $251,835.49 for reimbursement of housing assistance funds disbursed by CAC to ineligible recipients (the "Demand Letter"). The allegations set forth in paragraphs 3.4 through 3.10 below are based on the allegations contained in the Demand Letter and its enclosures and other information obtained by PIIC regarding this matter.

3.4    This matter arises from CAC's work administering Emergency Rental Assistance ("ERA") funds to low-income community members. CAC administered these funds under contracts it entered into with Thurston County. The period of performance for the first set of contracts, No. 2021-TRAP-CAC-RA and No. 2021-ComTRAP-CAC-RA (collectively, the "ERA-1 Contracts"), was from February 16, 2021 to December 31, 2021 and April 6, 2021 to September 30, 2022, respectively. The period of performance for the second contract, No. 2021-TRAP2-CAC-RA (the "ERA-2 Contract") was from September 1, 2021 to September 30, 2024.

3.5    The ERA funds were provided by the United States Department of the Treasury to the State of Washington and Thurston County pursuant to appropriations proscribed by Congress during the COVID-19 pandemic. The State distributed some of its funds to Thurston County. Thurston County retained CAC to solicit applications from community members, determine eligibility for assistance, and disburse the funds for the benefit of eligible applicants.

3.6    On January 24, 2022, Thurston County's auditor provided written recommendations to CAC for improving compliance with the ERA program requirements and its internal controls following the County's monitoring of CAC's work in late 2021. These recommendations included implementation of additional fraud prevention procedures and improved internal controls. CAC responded to the County's recommendations by objecting to them as inconsistent with the requirements set forth in their contracts and

COMPLAINT FOR DECLARATORY RELIEF
NO.: _____

PAGE 3

requesting that they be incorporated directly into the contract language. CAC also noted that some of the recommendations were contrary to the goal of reducing barriers for providing housing assistance to low-income community members. Following this exchange, meetings were held and additional correspondence was sent between CAC and the County.

       3.7    The contracts between CAC and Thurston County were suspended by the County on February 23, 2022 due to suspected fraud found by the County Auditor. CAC denied that fraud occurred and then terminated its ERA contracts with the County.

       3.8    Thurston County proceeded with a more comprehensive audit of CAC's disbursement of ERA funds in 2022. According to its letter dated July 19, 2024, the County's audit found multiple instances of fraud with respect to ERA funds administered by CAC. The County reported these instances to the United States Department of Treasury pursuant to federal regulations. The County further advised that it would seek recoupment of funds improperly disbursed by CAC.

       3.9    The Demand Letter enclosed two Notice of Recoupment letters authored by the Department of Treasury. These letters described 16 separate instances of ERA funds obtained by applicants who should not have received funds under the applicable rules and regulations. Thurston County's demand for payment by CAC was expressly based on provisions in the ERA-1 Contracts requiring CAC to reimburse the County for ERA payments made to ineligible recipients.

       3.10    In the Demand Letter, Thurston County further advised that it anticipated seeking reimbursement of an additional $416,154.15 from CAC for funds disbursed to ineligible recipients under the ERA-2 Contract. Accordingly, Thurston County stated that the total amount of funds to be repaid by CAC would be $667,989.64.

       3.11    On August 7, 2024, CAC submitted Notice of a Potential Claim to PIIC based on Thurston County's July 19, 2024 letter to CAC. This Notice referred to Directors & Officers Liability coverage provided under Policy No. PHSD1837449.

3.12　　On August 13, 2024, CAC forwarded the Demand Letter to PIIC by e-mail. PIIC treated this communication from CAC as a tender of the claims asserted in the Demand Letter.

**B.　　The Package Policies**

3.13　　PIIC issued a Commercial Lines Policy, number PHPK2198356, to CAC as the named insured. This policy was in effect from November 1, 2020 to November 1, 2021. This policy was renewed under Policy No. PHPK2342020 with a policy period of November 1, 2021 to November 1, 2022. These policies will be hereinafter referred to as the "Package Policies."

3.14　　The Package Policies provide human services organization professional liability ("HSOP") coverage under the terms and conditions contained therein. The HSOP coverage provided by the Package Policies is subject to limits of $1,000,000 each professional incident and $2,000,000 aggregate. The Package Policies contain the same pertinent terms and conditions.

3.15　　The Package Policies contain the following insuring agreement for HSOP coverage:

> **SECTION I – COVERAGE**
>
> **HUMAN SERVICES ORGANIZATION**
>
> **PROFESSIONAL LIABILITY**
>
> **A. Insuring Agreement**
>
> 1. We will pay those sums that the insured becomes legally obligated to pay as "damages" arising out of a "professional incident" in the course of performing professional services for, or on behalf of, your human services organization to which this insurance applies. We have the right and duty to defend any "suit" seeking those "damages". We may at our discretion investigate and settle any "professional incident, subject to **SECTION IV –**

COMPLAINT FOR DECLARATORY RELIEF
NO.: _____

PAGE 5

**Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

**CONDITION K**, any claim or "suit." But:

    a. The amount we will pay for "damages" is limited as described in **SECTION III – LIMITS OF INSURANCE**; and

    b. Our right and duty to defend ends when we have used up our applicable limit of insurance in the payment of judgments or settlements.

2. This insurance applies to "damages" only if:

    a. The "damages" result from a "professional incident" that takes place in the "coverage territory"; and

    b. The "professional incident" occurs during the policy period:

PI-HS-003 (07/04).

    3.16    The Package Policies contain the following exclusions for HSOP coverage:

**SECTION I – COVERAGE**

**HUMAN SERVICES ORGANIZATION**

**PROFESSIONAL LIABILITY**

. . .

**B.  Exclusions**

This insurance does not apply to "damages":

1. Expected or intended from the standpoint of the insured.

2. For any actual or alleged breach of contract or agreement. This exclusion does not apply to liability for "damages" that the insured would have in the absence of the contract or agreement.

. . .

20. Arising out of any criminal, dishonest, fraudulent or malicious act or omission. This

COMPLAINT FOR DECLARATORY RELIEF
NO.: _____

PAGE 6

exclusion does not apply to any insured who did not:

    a.  Personally participate in committing any such act; or

    b.  Remain passive after having personal knowledge of any such act or omission.

. . .

22. Arising out of acts, errors or omissions of a managerial or administrative nature.

PI-HS-003 (07/04).

3.17　　The Package Policies contain the following provisions regarding the duties of an insured for HSOP coverage:

**SECTION IV – CONDITIONS**

. . .

**C.  Duties In The Event Of Professional Incident, Claim Or Suit**

1.  You must see to it that we are notified as soon as practicable of a "professional incident" which may result in a claim. To the extent possible, notice should include:

    a.  All available information about the circumstances concerning the "professional incident" including:

        (1) How, when and where it took place; and

        (2) The names and addresses of any witnesses and persons seeking "damages"; and

    b.  What claim you think may result.

However, even when you notify us of a "professional incident", this does not relieve

COMPLAINT FOR DECLARATORY RELIEF
NO.: _____

PAGE 7

**Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

you of your obligation to also notify us of any resulting claim or "suit".

2. If a claim is made or "suit" is brought against any insured, you must:

   a. Immediately record the specifics of the claim or "suit" and the date received; and

   b. Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

3. You and any other involved insured must:

   a. Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   b. Authorize us to obtain records and other information;

   c. Cooperate with us in the investigation, settlement or defense of the claim or "suit";

   d. Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply; and

   e. In no way jeopardize our rights after a "professional incident".

4. No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

PI-HS-003 (07/04).

   3.18    The Package Polices contain the following definitions of pertinent HSOP coverage terms:

   Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we",

"us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II – WHO IS AN INSURED**.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V – DEFINITIONS**

. . .

**SECTION V – DEFINITIONS**

. . .

E. **"Damages"** means a monetary:

   1. Judgment;

   2. Award; or

   3. Settlement,

but does not include fines, sanctions, penalties, punitive or exemplary damages or the multiple portion of any damages.

. . .

P. **"Professional incident"** means any actual or alleged negligent:

   a. Act;

   b. Error; or

   c. Omission

in the actual rendering of professional services to others, including counseling services, in your capacity as a human services organization. Professional services includes the furnishing of food, beverages, medications or appliances in connection therewith.

Any or all "professional incidents" arising from interrelated or series of acts, errors or omissions shall be deemed to be one "professional incident" taking place at the time of the earliest "professional incident."

Q. **"Suit"** means a civil proceeding in which "damages" are sought and to which this insurance applies. "Suit" also includes:

1. An arbitration proceeding in which such "damages" are sought and to which you must submit or do submit with our consent; or

2. Any other alternative dispute resolution proceeding in which such "damages" are sought and to which you submit with our consent.

PI-HS-003 (07/04).

3.19    The Package Policies contain the following condition:

**SECTION IV – CONDITIONS**

. . .

L. **Two or More Coverage Parts Or Policies Issued By Us**

It is our stated intention that the various coverage parts or policy issued to you by us, or any company affiliated with us, do not provide any duplication or overlap of coverage for the same claim or "suit". If this policy and any other coverage part or policy issued to you by us, or any company affiliated with us, apply to the same "professional incident", occurrence, offense, wrongful act, accident or loss, the maximum Limit of Insurance under all such coverage parts or policies combined shall not exceed the highest applicable Limit of Insurance under any one coverage part or policy.

This condition does not apply to any Excess or Umbrella Policy issued by us specifically to apply as excess insurance over this policy.

PI-HS-003 (07/04).

3.20    The Package Policies contain the following endorsement regarding reimbursement of defense costs:

COMPLAINT FOR DECLARATORY RELIEF NO.: _____

PAGE 10

1

## WASHINGTON CHANGES – DEFENSE COSTS

2
This endorsement modifies insurance provided under
the following:

3
. . .

4
COMMERCIAL GENERAL LIABILITY COVERAGE PART

5
. . .

6
**A.** The provisions of Paragraph B. are added to all
Insuring Agreements that set forth a duty to defend
under:

7

8
. . .

9
    **1.** Section **I** of the Commercial General
Liability,...Coverage Parts, ...;

10

. . .

11
    Paragraph **B.** also applies to any other provision in
the policy that sets forth a duty to defend.

12

13
**B.** If we initially defend an insured ("insured") or pay
for an insured's ("insured's") defense but later
determine that none of the claims ("claims"), for
which we provided a defense or defense costs, are
covered under this insurance, we have the right to
reimbursement for the defense costs we have
incurred.

14

15

16

17
The right to reimbursement under this provision
will only apply to the costs we have incurred after
we notify you in writing that there may not be
coverage and that we are reserving our rights to
terminate the defense or the payment of defense
costs and to seek reimbursement for defense costs.

18

19

20

21
IL 01 23 11 13.

22
**C.**    **The FPF Policy**

23
    3.21    PIIC issued a Commercial Lines Policy, number PHSD1837449, to CAC with

24
a policy period of November 1, 2023 to November 1, 2024 (the "FPF Policy").

25
    3.22    The FPF Policy provides Directors and Officers Liability ("D&O") coverage

26

COMPLAINT FOR DECLARATORY RELIEF
NO.: _____

PAGE 11

**Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

on a claims-made basis. D&O Coverage is limited to $1,000,000 per policy period and subject to a $25,000 per claim retention.

3.23    The FPF Policy contains the following insuring agreements for D&O coverage:

**Part 1**

**Not-for-Profit Organization Directors & Officers Liability Insurance**

(To be read in conjunction with the Common Policy Definitions, Exclusions, and Conditions Sections, Parts 6, 7, 8 below)

I.   INSURING AGREEMENTS

A.   The **Underwriter** will pay on behalf of the **Individual Insured**, **Loss** from **Claims** made against **Individual Insureds** during the **Policy Period** (or, if applicable, during the Extension Period), and reported to the **Underwriter** pursuant to the terms of this Policy, for **D&O Wrongful Acts**, except to the extent the **Organization** has indemnified the **Individual Insureds** for such **Loss**.

B.   The **Underwriter** will pay on behalf of the **Organization**, **Loss** from **Claims** made against **Individual Insureds** during the **Policy Period** (or, if applicable, during the Extension Period), and reported to the **Underwriter** pursuant to the terms of this Policy, for **D&O Wrongful Acts**, if the **Organization** has indemnified such **Individual Insureds** for such **Loss**.

C.   The **Underwriter** will pay on behalf of the **Organization**, **Loss** from **Claims** made against the **Organization** during the **Policy Period** (or, if applicable, during the Extension Period), and reported to the **Underwriter** pursuant to the terms of this Policy, for a **D&O Wrongful Act**.

## II. DEFINITIONS

### A. **D&O Wrongful Act** means any actual or alleged:

1. Act, error, omission, misstatement, misleading statement, neglect, breach of duty or **Personal & Advertising Injury** committed or attempted by an **Individual Insured** in his/her capacity as an **Individual Insured** or any other matter claimed against any **Individual Insured** solely by reason of his or her status as an **Individual Insured**.

PI-NPD-2 (01/02), as modified by PI-NPD-82 (10/22).

3.24    The FPF Policy contains the following exclusions:

### Part 7

#### Common Policy Exclusions

The **Underwriter** shall not be liable to make any payment for Loss in connection with any **Claim** made against the **Insured**:

. . .

A. Arising out of, based upon or attributable to such **Insured** gaining any profit, remuneration or advantage to which they were not legally entitled; however, this exclusion shall only apply if a final and non-appealable judgment or adjudication in the underlying action establishes the Insured committed such act or omission;

B. Arising out of, based upon or attributable to any dishonest or fraudulent act or omission or any criminal act or omission by such **Insured**; however, this exclusion shall only apply if a final and non-appealable judgment or adjudication establishes the **Insured** committed such act or mission…;

C. Arising out of, based upon or attributable to any actual or alleged liability under any written or oral agreement; however, this exclusion shall not apply to liability which would have attached even in the absence of such contract or agreement.

1    [This exclusion] will not apply to **Claims** with
2    respect to coverage provided under Section I.
     INSURING AGREEMENTS, Paragraph A.

3    PI-NPD-2 (01/02), as modified by PI-NPD-82-(10/22) and PI-NPD-133 (10/14).

4              **PROFESSIONAL SERVICES EXCLUSION**
5                   **(SUPERVISION CARVE-OUT)**

6    This endorsement modifies and is subject to the
7    insurance provided under the following:

8    FLEXIPLUS FIVE

9    The Policy is amended as follows:

10   With respect to coverage under Part 1, the
     **Underwriter** shall not be liable to make any payment
11   for **Loss** in connection with any **Claim** made against
     the **Insured** based upon, arising out of, directly or
12   indirectly resulting from or in consequence of, or in
     any way involving the **Insured's** performance of or
13   failure to perform professional services for others.

14   Provided, however, that the foregoing shall not be
15   applicable to any derivative action **Claim** alleging
     failure to supervise those who performed or failed to
16   perform such professional services.

17   PI-NPD-25 (1-02).

18        3.25    The FPF Policy contains the following definitions of pertinent terms used

19   therein:

20                          **Part 6**

21                   Common Policy Definitions

22        . . .

23        B. **Claim** means for the purpose of Parts 1, 2, 3, and
              5:

24           1.  Any written demand for monetary or non-
                 monetary relief (including injunctive); or

25
26           2.  Any civil proceeding, including any appeals
                 therefrom, commenced by the filing, notice

or service of compliant, pleading, summons or similar document; or

. . .

5. Any arbitration, mediation or similar alternative dispute resolution proceeding commenced by receipt of a demand for such proceeding;

Against an **Insured** for a **Wrongful Act**, including any appeal therefrom; or

. . .

A **Claim** shall be considered made when an **Insured** first receives notice of the **Claim**.

C. **Damages** means a monetary judgment, award or settlement, including punitive and exemplary damages or multiple portion thereof, (including pre and post judgment interest thereon) to the extent such punitive and exemplary damages or multiple portion thereof, are insurable under applicable law of any jurisdiction which has a substantial relationship to the **Insured** or to the **Claim** seeking such damage, and which is most favorable to the insurability of such damage.

. . .

F. **Individual Insured** means:

1. Any individual who has been, now is or will become a director, officer, governor, trustee, equivalent executive, employee (whether salaried or not), volunteer, intern, management committee member, risk manager, in-house counselor member of the Board of Managers of the **Organization**, or,…Solely in regard to Parts 1 and 3, **Individual Insured** includes member of an Advisory Board; any past employee, director, officer, governor, trustee, volunteer, management committee member, risk manager, in-house counsel, member of the

Board of Managers of the **Organization** retained as a fiduciary or plan consultant to the **Benefit Plan**; provided that for the purpose of determining the **Organization's** indemnification obligation to any such consultants, each consultant shall be deemed a director or officer of the **Organization**. Accordingly, the **Organization** shall be deemed to have granted indemnification to each consultant to the fullest extent permitted by statutory or common law to the same extent as any director or officer of the **Organization**;

. . .

G. **Insured** means the **Organization** and **Individual Insured**.

. . .

I. **Loss** means:

1. **Damages**;

2. **Defense Costs**;

but **Loss** does not include:

    a. fines or penalties imposed by law…; or

. . .

    b. taxes; or

    c. matters deemed uninsurable under the law to which this Policy shall be construed; or

    d. any amounts other than **Defense Costs**, which an **Insured** is obligated to pay as a result of a **Claim** seeking relief or redress in any form other than monetary damages; or

. . .

J. **Organization** means:

1. The **Parent Organization**,

COMPLAINT FOR DECLARATORY RELIEF
NO.: _____

PAGE 16

**Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

. . .

      **K. Parent Organization** means the first entity named in Item 1. of the Declarations.

. . .

      **N. Underwriter** means the stock insurance company check marked on the Declarations of this Policy.

      **O. Wrongful Act** means:

         1. With respect to Part 1, any **D&O Wrongful Act**,

PI-NPD-2 (01/02), as modified by PI-NPD-82 (10/22).

    3.26    The FPF Policy contains the following condition:

## Part 8

### Common Policy Conditions

. . .

**XVIII. TWO OR MORE COVERAGE PARTS OR POLICIES ISSUED BY THE UNDERWRITER**

It is the **Underwriter's** stated intention that the various coverage parts or policies issued to the **Parent Organization** by the **Underwriter**, or any affiliated company, do not provide any duplication or overlap of coverage for the same **Claim** or **Workplace Violence Act**. Notwithstanding the other insurance provision, if this Policy and any other policy issued to the **Parent Organization** by the **Underwriter**, or any affiliated company, apply to the same **Wrongful Act**, **Workplace Violence Act**, professional incident, occurrence, offense, accident or **Loss**, then the maximum Limit of Liability under all such policies combined shall not exceed the highest applicable Limit of Liability under any one policy.

PI-NPD-2 (01/02).

COMPLAINT FOR DECLARATORY RELIEF
NO.: _____

PAGE 17

**Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

3.27    The Package Policies and the FPF Policy are hereinafter collectively referred to as the "Policies."

**D.    <u>PIIC agreed to defend CAC, but reserved its rights.</u>**

3.28    CAC tendered the Underlying Claims to PIIC.

3.29    Although PIIC believed the Policies do not afford coverage for the Underlying Claims, PIIC agreed to appoint and pay for counsel to defend CAC.  PIIC did so, however, while reserving all rights under the Policies and applicable law, including the right to conclude no coverage is afforded by the Policies and to file a declaratory judgment lawsuit— like this one—seeking a court's guidance regarding PIIC's obligations under the Policies and whether PIIC may withdraw its defense of CAC in this matter.

3.30    On September 19, 2024, PIIC sent a letter to CAC advising that there may not be coverage under the Policies, but PIIC had nevertheless agreed to defend the CAC against the Underlying Claims as a matter of good faith and subject to a full reservation of rights. This letter advised that PIIC was reserving its rights to terminate the defense and/or payment of defense costs.  This letter further advised that PIIC was reserving its right to seek reimbursement of defense costs under the Package Policies.

## IV.  <u>ACTUAL CASES AND CONTROVERSIES UNDER THE POLICIES</u>

4.1    PIIC incorporates by reference the allegations set forth above in Paragraphs 1.1 through 3.30.

4.2    There is an actual and justiciable controversy as to whether any coverage is available under the terms of the Policies with respect to the Underlying Claims.

4.3    There is an actual and justiciable controversy regarding whether PIIC is obligated to continue to defend CAC with respect to the Underlying Claims.

4.4    There is an actual and justiciable controversy as to whether the Underlying Claims include a claim for loss or "damages" arising from a "professional incident" and/or

arising out of CAC's performance of or failure to perform professional services for others, as defined or described by the Policies.

4.5    There is an actual and justiciable controversy as to whether the Underlying Claims include a "Claim" for "Damages" made against CAC for "D&O Wrongful Acts," as those terms are defined by the FPF Policy.

4.6    There is an actual and justiciable controversy as to whether any damages sought against CAC with respect to the Underlying Claims are based on its actual or alleged liability under any written or oral agreement, actual or alleged breach of contract, or assumption of liability in a contract, and CAC would not be liable for such damages in the absence of the contract or agreement.

4.7    There is an actual and justiciable controversy as to whether CAC's liability for damages with respect to the Underlying Claims was based on its intentional or fraudulent conduct.

4.8    There is an actual and justiciable controversy as to whether the other exclusions contained in the Policies apply to preclude coverage for the Underlying Claims.

4.9    There is an actual and justiciable controversy as to whether CAC has breached the duties it owes under the Policies and has caused actual and substantial prejudice to PIIC in this matter as a result.

4.10    There is an actual and justiciable controversy as to whether the more than one of the Policies or coverages provided by the Policies apply to the Underlying Claims and whether the limits of such coverages for this matter shall not exceed the highest limit under any one policy.

4.11    There is an actual and justiciable controversy as to whether PIIC is entitled to reimbursement of the costs, including attorney fees, it has paid or will pay to defend CAC against the Underlying Claims.

COMPLAINT FOR DECLARATORY RELIEF
NO.: _____

PAGE 19

**Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

4.12    PIIC reserves the right to assert any other provisions, exclusions, or grounds for which coverage for the Underlying Claims may be precluded under the Policies.

## V.  CLAIMS FOR DECLARATORY RELIEF

5.1    PIIC incorporates by reference the allegations set forth above in Paragraphs 1.1 through 4.11.

5.2    PIIC is entitled to Declaratory Judgment in its favor stating that:

(a)    PIIC does not owe any duty to defend CAC against the Underlying Claims;

(b)    PIIC may withdraw its defense of CAC against the Underlying Claims;

(c)    PIIC is entitled to reimbursement of the costs, including attorney fees, it paid to defend CAC against the Underlying Claims; and

(d)    PIIC does not owe any coverage or duty to indemnify CAC under the Policies with respect to the Underlying Claims.

## VI. PRAYER FOR RELIEF

Philadelphia Indemnity Insurance Company, having specifically alleged the foregoing, requests the following relief:

6.1    Declaratory judgment in favor of PIIC as described above.

6.2    For any recoverable attorney fees and/or costs it incurred in bringing this action to the extent allowed by law.

6.2    For such further relief as the Court deems just, proper, and equitable.

//

//

//

//

COMPLAINT FOR DECLARATORY RELIEF
NO.: _____

PAGE 20

**Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

1   DATED:  April 18, 2025

2                                           BULLIVANT HOUSER BAILEY PC

3

4                                           By

5                                                Westin McLean, WSBA #46462
                                                 E-mail:   westin.mclean@bullivant.com

6                                           *Attorney for Plaintiff Philadelphia Indemnity*
                                            *Insurance Company*

7
    4916-8225-0551.1
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

COMPLAINT FOR DECLARATORY RELIEF            PAGE 21     **Bullivant|Houser|Bailey PC**
NO.: _____                                       925 Fourth Avenue, Suite 3800
                                                       Seattle, Washington 98104
                                                       Telephone: 206.292.8930